

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAMES R. CLAUNCH, INDIVIDUAL, §
P.C., §
 §
Plaintiff, §
 §
VS. § NO. 4:07-CV-548-A
 §
THE TRAVELERS LLOYDS §
INSURANCE COMPANY, §
 §
Defendant. §

MEMORANDUM OPINION
and
ORDER

On December 6, 2007, defendant, The Travelers Lloyds Insurance Company, filed a motion for summary judgment in the above-captioned action. Plaintiff, James R. Claunch, Individual, P.C., responded on December 26, 2007. Defendant filed its reply on January 8, 2008. Having considered defendant's motion, plaintiff's response, defendant's reply, the summary judgment evidence, and applicable authorities, the court concludes that defendant's motion should be granted.

I.

Plaintiff's Claims

Plaintiff filed its first amended complaint on November 21, 2007. Plaintiff alleges that defendant, its insurance provider, breached the insurance contract in denying a claim plaintiff made thereunder, and that, in connection with its denial of the claim,

defendant engaged in unfair settlement practices in violation of section 541.060 of the Texas Insurance Code.

II.

## The Motion for Summary Judgment

Defendant seeks a summary adjudication that the insurance policy's water exclusion precludes coverage, and that it did not act in bad faith in denying plaintiff's claim.

III.

## Facts

The record establishes the following facts without dispute:

Plaintiff is a law firm. On January 22, 2007, defendant issued plaintiff Policy No. IL-PACP-3225C776-TLC-07 (the "Policy"). The Policy included Businessowners Property Coverage, which covered a building at 2912 West 6th Street, Fort Worth, Texas (the "Premises") where plaintiff's law firm is located.

On or about July 9, 2007, plaintiff notified defendant that it had sustained water damage to the basement of the Premises. Defendant assigned the claim to Cliff Dalton ("Dalton"), a claims representative. Dalton contacted plaintiff in regards to the claim, and spoke with Anna Claunch ("A. Claunch"), plaintiff's office manager. A. Claunch told Dalton that she did not know where the water in the basement was coming from, but that it had been raining a lot. Several inches of rain had fallen on the

Premises in the three to four weeks preceding plaintiff's discovery of the basement flooding.

On July 10, 2007, Dalton inspected the Premises. An exterior door at the bottom of a staircase provides access to the basement of the Premises. A floor drain is located at the bottom of the staircase in the area immediately outside the basement door. Dalton noted that water was pooled around this drain, and based on his inspection, he believed that the water was entering the basement under the exterior door. On July 11, 2007, Dalton notified plaintiff that he did not believe that the loss to the basement was covered under the Policy because it had been caused by surface water or flooding.

Plaintiff hired Blackman Mooring Company ("Blackman Mooring") on July 12, 2007, to pump the water out of the basement. Blackman Mooring pumped the standing water out of the basement, and attempted to pump the water from the drain outside the basement's exterior door. After two to three hours of pumping, Blackman Mooring stated that there seemed to be no end to the water, and they were unable to determine the source of the water. Blackman Mooring suggested that plaintiff call a plumber.

Plaintiff did so, and on July 13, 2007, Brian McCall ("McCall"), a plumber with Roto Rooter, inspected the basement.

McCall located the sump[1] and determined that the sump pump, which was supposed to pump water out of the sump, was not working. McCall replaced the broken sump pump, which remedied the problem. McCall subsequently opined that:

> [T]here were two possible sources for the water [in the basement], either it was overflowing from the sump pit inside the basement, or it was coming in under the exterior door because the water was pooling there and had no place to drain. It is likely that the water in the basement was from some combination of these sources.

Def.'s App. at 85.

Based on McCall's action, plaintiff took the position that the broken sump pump, rather than the exterior drain outside of the basement door, was the cause of the basement flooding. Dalton maintained his position that "the water pumped out of the basement was rain water that did not drain properly due to stoppage of the storm drain," Def.'s App. at 81, formally declining coverage on behalf of defendant by letter dated July 20, 2007. This action ensued.

---

[1]McCall explains that:

The sump is about [four] feet deep and about [twenty] inches in diameter. The sump is shaped like a barrel that fits down into the ground. The top of the sump is level with the surface of the basement. The purpose of the sump is to collect subterranean water beneath the building and then the sump pump takes the water into the plumbing system. . . . The sump pump is inside the sump."

Pl.'s App. at tab 3, p. 2.

IV.

## Pertinent Provisions of the Policy

The parts of the description of the insurance coverage provided by the Businessowners Property Coverage that are pertinent to the contentions of plaintiff are as follows:

    A.    COVERAGE

        We will pay for direct physical loss of or damages to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

        1.    Covered Property

            Covered Property, as used in this Coverage Form, means the type of property described in this Paragraph A.1., and limited in Paragraph A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

            a.    Building, meaning in the building or structure described in the Declarations, including:

. . . .

                (5)    Permanently attached:

                    (a) Machinery; and

                    (b) Equipment; . . . .

Def.'s App. at 15. An extension of the coverage upon which plaintiff relies is found in paragraph 7.i. in the Coverage section of the Policy, reading, in pertinent part, as follows:

    7.    Coverage Extensions

        Unless otherwise stated, payments made under the following Coverage Extensions are subject to and

not in addition to the applicable Limits of
Insurance.

. . . .

    i.    Equipment Breakdown

    (1)  When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to Covered Property at the described premises caused by or resulting from a "breakdown" to "covered equipment".

. . . .

    (6)  The following exclusions in Paragraph B. Exclusions do not apply to this Coverage Extension:

        (a)  Paragraph 2.a.;

        (b)  Paragraph 2.d.(6); and

        (c)  Paragraph 2.e.

Def.'s App. at 31-32.

Pertinent exclusions in the "Paragraph B Exclusions" are as follows:

  B.    EXCLUSIONS

    1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . . .

g.  Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

. . . .

(3) Water or sewage that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings;

all whether naturally occurring or due to man made or other artificial causes.

Def.'s App. at 36-37.

V.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material

fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 256. To meet this burden, the nonmovant must "identify specific evidence in the record[] and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

VI.

Analysis

A. Contractual Claim

"Texas courts interpret insurance policies using the rules of interpretation and construction generally applicable to other contracts." Performance Autoplex II Ltd. v. Mid-Continent Cas.

Co., 322 F.3d 847, 853-854 (5th Cir. 2003) (citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995)). The court's primary concern in construing an insurance policy is to ascertain the true intent of the parties as expressed in the instrument. CBI Indus., Inc., 907 S.W.2d at 520. If an insurance policy is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. Id. "Mere disagreement over the interpretation of a provision does not make the provision ambiguous or create a question of fact." Performance Autoplex II Ltd., 322 F.3d at 854. Defendant, the insurer, bears the burden of establishing that a coverage exclusion applies. See Tex. Ins. Code Ann. § 554.002 (Vernon Supp. 2007).

The record before the court establishes without dispute that the water in plaintiff's basement overflowed from the sump, came in under the exterior basement door, or both.[2] Plaintiff contends that all of the water came from overflow of the sump, resulting from a malfunction of the sump pump, which has as its role pumping the water out of the sump into the city sewage system. There is a suggestion by the summary judgment record

---

[2]The court recognizes that the source of the water in the basement is a genuine issue of fact. However, this fact issue is not material because its resolution does not affect the outcome of this action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As discussed below, the court concludes that the Policy's water exclusion precludes coverage regardless of any source of the water's entry into the basement that is supported by the record currently before the court.

that some of the water that entered into the sump causing it to overflow could be characterized as subterranean water. Defendant argues that, regardless of the possibilities suggested by the summary judgment record as to how the water got into the basement, the water exclusion precludes coverage. The court agrees.

In paragraph B.1.g., the Policy explicitly excludes loss or damage caused directly or indirectly by "surface water" or "[w]ater . . . that backs up or overflows from a . . . sump . . . ." or "[w]ater under the ground surface pressing on, or flowing or seeping through . . . [b]asements, whether paved or not; or . . . [d]oors, windows or other openings . . . ." Def.'s App. at 37. Thus, under the plain terms of the Policy, the loss or damage is excluded if it came from any of the sources suggested by the record.[3]

Plaintiff's position is that the loss or damage is covered under the Policy because, the "exclusive cause of the loss [was] the broken sump pump, which [was] not excluded under the Policy . . . ." Pl.'s Br. at 9. Plaintiff reasons that the sump pump

---

[3]Plaintiff seems to argue that the loss or damage is covered because: "The words 'sump pump' or the word 'pump' do not appear in the exclusion. The sump pump is not an excluded piece of equipment under the Policy." Pl.'s Br. at 8. The plain language of the water exclusion makes clear that loss or damage caused directly or indirectly by water backing up or overflowing from the sump, whether naturally occurring or due to man made or other artificial causes, is excluded. The mere fact that plaintiff disagrees with this interpretation does not create an issue that can prevent grant of summary judgment. Performance Autoplex II Ltd. v. Mid-Continent Cas. Co., 322 F.3d 847, 854 (5th Cir. 2003).

10

was permanently attached machinery or equipment, as contemplated by paragraph A.1.a.(5) of the Policy, and, therefore, the loss or damage is covered under the coverage extension for equipment breakdown in paragraph A.7.i.(1). The court disagrees. Paragraph A.7.i.(6) states that only three subparagraphs of Paragraph B Exclusions do not apply to the coverage extension for equipment breakdown: (1) paragraph B.2.a., which relates to damage caused by electrical current (Def.'s App. at 38); (2) paragraph B.2.d.(6), which relates to mechanical breakdown (id. at 39); and (3) paragraph B.2.e., which relates to steam boilers, pipes, engines, turbines, and the like (id.). All other parts of the Paragraph B Exclusions apply, so the coverage extension for equipment breakdown is subject to the water exclusions in paragraph B.1.g. Thus, even if plaintiff is correct that the exclusive cause of the loss was the broken sump pump, paragraph B.1.g.(3) expressly prevents coverage for loss or damage caused by water backing up or overflowing from the sump.[4]

Plaintiff has failed to educe an ambiguity in the Policy or otherwise raise a genuine issue of material fact as to whether the water damage exclusions relied upon by defendant apply.

---

[4] The Policy's "anti-concurrent cause" provision further supports this conclusion, providing that "loss or damage [described in paragraph B. EXCLUSIONS] is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Def.'s App. at 36.

Defendant has carried its burden to show as a matter of law that they do apply.

B.  Extra-Contractual Claims

Plaintiff alleges that defendant has engaged in unfair settlement practices in violation of section 541.060 of the Texas Insurance Code. "Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas." Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 460 (5th Cir. 1997). Thus, "an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." Id. It follows, a fortiori, that "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995). As discussed above, defendant properly denied plaintiff's claim because it was excluded under the Policy. Therefore, plaintiff's extra-contractual claims necessarily fail. See id.

VII.

Order

For the reasons discussed above,

The court ORDERS that all claims and causes of action asserted by plaintiff in the above-captioned action be, and are

hereby, dismissed with prejudice.

SIGNED January 10, 2008.

_____
JOHN McBRYDE
United States District Judge